UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOANNA ROCHE,                    )
                    Plaintiff    )
                                 )
                                 )
          v.                     )     Civil Action No. 12-30058-KPN
                                 )
                                 )
                                 )
MORGAN COLLECTION, INC., LINDA   )
S. KAGAN, and ANDREW T. MORGAN   )
                    Defendants   )


MEMORANDUM AND ORDER WITH REGARD TO
PLAINTIFF'S MOTION TO REMAND AND DEFENDANTS'
MOTION TO DISMISS (Document Nos. 6 and 16)
August 1, 2012

NEIMAN, U.S.M.J.

Joanna Roche ("Plaintiff") alleges that her former employer, Morgan Collection,

Inc. ("Morgan Collection") and its officers, Andrew T. Morgan ("Morgan") and Linda S.

Kagan ("Kagan") (together "Defendants"), failed to pay her compensation, benefits, and

reimbursements owed to her at the time of her termination.  Plaintiff filed an action in

state court asserting claims pursuant to the Massachusetts Wage Act ("Wage Act" or

"The Act"), MASS. GEN. L. c. 149 §§ 148, 150, and state common law.

Defendants removed the action pursuant to 28 U.S.C. §§ 1441 and 1446,

asserting that this court has jurisdiction over the action pursuant to 28 U.S.C. § 1332.

Plaintiff has filed a motion to remand, arguing that Defendants' notice of removal was

untimely.  Defendants have opposed the motion.  In addition, Defendants have filed a

motion to dismiss, which Plaintiff has opposed as well.

The parties have jointly consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  For the reasons that follow, the court will deny Plaintiff's motion to remand and allow, in part, Defendants' motion to dismiss.

## I. BACKGROUND

Except where indicated, the following facts come directly from Plaintiff's complaint.  Plaintiff was employed by Defendants as Vice President of Sales and Marketing from approximately December 2010 to the end of 2011.  (Complaint ¶¶ 11, 16.)  Her job responsibilities included a variety of marketing and public relations matters.  (Id. ¶ 11.)  Plaintiff alleges that, pursuant to her employment agreement, she would receive in exchange for her services compensation which included "an annual salary, paid travel expenses, paid vacation, sick and personal time, reimbursement for health insurance costs and additional agreed compensation based on company revenue."  (Id. ¶ 12.)  Although Plaintiff does not offer a reason, she alleges that Defendants terminated her employment at the end of 2011 without good cause.  (Id. ¶ 21.)  Plaintiff further alleges that Defendants failed to pay her the compensation to which she was entitled pursuant to their agreement. (Id. ¶ 22.)

On or about January 20, 2012, Plaintiff filed a wage complaint with the Massachusetts Office of the Attorney General's Fair Labor Division, alleging that Morgan Collection committed wage violations in connection with her employment.  (Id. ¶ 23.)  On or about January 26, 2012, the Attorney General assented in writing to Plaintiff's request to institute a civil action and prosecute the instant wage complaint on her own behalf.  (Id. ¶ 24.)

On February 1, 2012, Plaintiff filed the complaint against Defendants in Berkshire County Superior Court.  On March 23, 2012, Defendants removed the case to federal court.  In their initial notice of removal, Defendants asserted that they were each served on February 23, 2012.  (Document No. 1.)  However, on April 20, 2012, Defendants amended their notice of removal, stating that upon further investigation they discovered that service on Morgan Collection occurred on February 22, 2012, one day earlier than previously indicated. Defendants also allege that Kagan and Morgan were not served on February 22nd at all and that service was not completed as to them until March 31, 2012.  (Document No. 13.)

Defendants elaborate on these facts in their opposition to Plaintiff's motion to remand.  They maintain that on February 22, 2012, a process server, Joseph Sanchez ("Sanchez"), arrived at Morgan Collection's corporate office in New York.  Kathy Guarino ("Guarino"), an accountant at Morgan Collection, states in her affidavit that she asked Kagan if she could accept service and that, after Kagan assented, she accepted but a single copy of a summons directed to Morgan Collection.  Defendants assert that Kagan and Morgan themselves did not receive any summons and complaint at that time, although it is not clear precisely when they finally did receive copies.

For her part, Plaintiff asserts that the summons and complaint were served on all defendants on February 21st, not February 22nd.  (Plaintiff's Motion to Remand at 1-2.)[1]  In addition, relying on Sanchez's affidavits, Plaintiff disputes the other facts

---

[1] Guarino avers that it would have been impossible for her to accept service of any kind on February 21, 2012, because she was not at work on that day.

3

asserted by Defendants.  Most importantly, Plaintiff asserts that Sanchez delivered

*three* copies of the summons to Guarino to be provided to each of the defendants.

(Document No. 12 at 1; Document No. 25 at 2.)

In any event, it is undisputed that copies of the summons and complaint were

mailed by Plaintiff to Kagan and Morgan on March 5, 2012.  (Ex. A-1 (Attached to

Complaint).)  It also appears to be undisputed, as Defendants allege, that proofs of

service were not filed with the Berkshire County Superior Court until March 21, 2012.

Because, under New York law, "service shall be complete ten days after such filing [of

the proof of service]," Defendants argue that service on Morgan and Kagan was not

effected until March 31, 2012.

## II. Discussion

### A. Motion to Remand

In seeking to remand the case to state court, Plaintiff claims that Defendants'

removal to federal court was improper because the notice of removal was filed too late.

Section 1446(b) of the United States Code, which governs removal, provides that "[t]he

notice of removal of a civil action or proceeding shall be filed within thirty days after the

receipt by the defendant, through service or otherwise, of a copy of the initial pleading

setting forth the claim for relief upon which such action or proceeding is based."  28

U.S.C. § 1446(b).  Although the thirty-day time limit is not jurisdictional, "it is a strictly

applied rule of procedure and untimeliness is a ground for remand."  *Flaherty v.*

*Flaherty*, 1992 WL 201103, at *1 (D. Mass. July 29, 1992).

Here, the parties' dispute centers around when section 1446(b)'s clock began to

run.   Under New York law, which the parties agree governs the service of process at issue, a plaintiff may effectuate formal service in several ways, including by "delivering the summons within the state to the person to be served," NY CPLR § 308(1), or by delivering the summons within the state to a person of suitable age and discretion at the actual place of business." NY CPLR § 308(2).  Because section 308(2) contemplates delivery of service on someone other than the target of the summons and complaint, it also includes certain safeguards to ensure that the target receives proper notice.  Thus, a plaintiff who opts to serve an individual pursuant to section 308(2), as Plaintiff did here, must comply with additional procedural requirements and may complete service

> by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business. . . . [S]uch delivery and mailing [are] to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing."

*Id.*

Plaintiff does not dispute Defendants' assertion that service on Kagan and Morgan was not "complete" pursuant to New York law until March 31, 2012, but argues that section 1446(b) does not require such completion of service before the thirty-day time limit for removal commences.  Rather, Plaintiff asserts, because section 1446(b) indicates that the clock for removal is triggered by a defendant's "receipt" of an initial pleading "through service *or otherwise*," 28 U.S.C. § 1446(b) (emphasis added), the

time limit for removal began when Guarino was provided a copy of the summons and complaint on February 21, 2012.

Defendants acknowledge that section 1446(b)'s requirement that a defendant be in "receipt" of an initial pleading may suggest that certain technical requirements of service need not be fully met in situations when a defendant is served directly, such as a corporate defendant pursuant to NY CPLR § 311 or an individual defendant pursuant to NY CPLR § 308(1).  Defendants argue, however, that under the circumstances here, where Morgan and Kagan were not directly served, the court should not deem them to have "received" the initial pleading until Plaintiff had complied with all the procedural requirements of New York law on March 31, 2012; this, Defendants assert, would ensure  proper notice under New York law and sufficient time for removal pursuant to federal law.

Neither of the arguments proffered by the parties is fully convincing.  For one thing, the approach urged upon the court by Plaintiff has already been rejected by the Supreme Court in *Murphy Brothers, Inc. v. Mitchetti Pipe Stringing*, 526 U.S. 344 (1999).  There, the Court considered whether the receipt of a copy of a complaint, accompanied by no other formal service, triggers the thirty-day time limit for removal. The Court held that "mere receipt of the complaint unattended by any formal service" is insufficient to begin the thirty-day time period.  *Id.* at 347.  Thus, the mere delivery here of a copy of the summons and complaint to Guarino did not begin the clock for removal, particularly as it concerns Kagan and Morgan.  As the district court later explained in *Carter v. Geldis*, 2002 WL 1159904, at *3 (E.D.N.Y. Apr. 23, 2002), even if a defendant

6

receives a complaint on the same day as the individual upon whom it was served

pursuant to NY CPLR § 308(2), the defendant can not be held to have "received" it at

that time because "two steps remain[ ] in the process of effecting service."  "To consider

such a delivery to be a 'receipt' sufficient to trigger the thirty-day time limit," the court

noted, "would be to endorse the adequacy of receipt unaccompanied by formal service,

the very rule struck down in *Murphy Brothers*."  *Id.*

Rejection of Plaintiff's position, however, does not necessarily require the court

to adopt the approach urged by Defendants, *i.e.*, compliance with *all* the requirements

of NY CPLR § 308(2) before the thirty-day time limit for removal is triggered.  This, in

the court's opinion, would unnecessarily promote form over substance when it comes to

enforcing section 1446(b).  Rather, the court, at least for present purposes, can easily

opt for a third approach, namely, that the thirty-day time limit for removal began on

March 6, 2012, the day after Plaintiff mailed copies of the summons and complaint to

both Morgan and Kagan.  This would respect the additional safeguards imposed by

New York to ensure that defendants who are not directly served nonetheless actually

"receive" notice, while, at the same time, not requiring compliance with the more

ministerial requirements of NY CPLR § 308(2), *e.g.*, waiting ten days after the filing of a

proof of service with the clerk of the state court, before the removal time clock

commences.  These ministerial requirements have an attenuated connection to the

"receipt" of the initial pleading, as that term is used in section 1446.  As the *Carter* court

noted, unlike the mailing requirement in the New York rules, "filing the proof of service

is a technical requirement with no clear connection to the goal of the removal statute; to

ensure that the defendant has adequate information to decide about removal." *Id.*

It is undisputed that the mailing required under NY CPLR § 308(2) occurred here on March 5, 2012.  Assuming that Kagan and Morgan received their copies of the summons and complaint the next day -- an event which the court deems highly unlikely given the state of postal delivery -- Defendants removed the action to federal court on March 23, 2012, well within the thirty-day time limit of section 1446(b).  It necessarily follows that Defendants' removal was also timely were the court to first require full compliance with all the service prerequisites of section 308(2), which occurred on March 31, 2012.  Moreover, Plaintiff's argument notwithstanding, it is of no consequence that Morgan Collection itself was served on an earlier date than Kagan and Morgan because it is the date of service on the *last*-served-defendant that triggers the clock for removal.  *See* The Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758, § 103 (2011) (adopting the last-served-defendant rule for all cases commenced on or after January 6, 2012).  The court will therefore deny Plaintiff's motion to remand.

B. Defendants' Motion to Dismiss

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992).  Moreover, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice

of what the ... claim is and the grounds upon which it rests.'" *Sepulveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir.2010).  The Supreme Court has made clear that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009).  The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

   1. Count I: Wage Act Claim

   The Wage Act, in pertinent part, provides that "every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or within seven days of the pay period during which the wages were earned if such employee is employed seven days in a calendar week." MASS. GEN. L. c. 149, § 148.  The statute allows for recovery of "wages," including accrued vacation and certain commissions.  *Id.*  The Massachusetts legislature enacted the Wage Act to "limit[ ] the interval between the completion of a work week and the payday on which the wages earned in that week will be paid." *Am. Mut. Liab. Ins. Co. v. Comm'r. of Labor and Indus.*, 163 N.E. 2d 19, 20 (Mass. 1959).  In furtherance of this purpose, the legislature also enacted section 150, which authorizes an aggrieved employee to bring a civil action within three years against an employer who fails to comply with certain statutory requirements, including

those outlined in section 148.  MASS. GEN. L., c. 149, § 150.  To state a claim under the

Wage Act, a plaintiff "must prove (1) he was an employee under the statute; (2) his

deferred compensation constitutes a 'wage' under the statute; [and] (3) the defendants

violated the Act by not paying him his wages in a timely manner."  *Doucot v. IDS*

*Scheer, Inc.*, 734 F. Supp. 2d 172, 192 (D. Mass. 2010).[2]

Here, Plaintiff claims that she is owed the following "wages" from Defendants:

1) travel expenses; 2) vacation time; 3) additional agreed to compensation based on

company revenue; 4) sick and personal time; and 5) reimbursement for health

insurance costs.  With the exception of "travel expenses," which they do not mention in

their motion to dismiss, Defendants assert that these items do not constitute "wages"

within the meaning of the Act.  For the reasons detailed below, the court will allow

Defendants' motion to dismiss Count I, but only with regard to Plaintiff's claim for

reimbursement for health insurance costs.

### a. Vacation Time

The Wage Act expressly defines the word "wages" to include "vacation

payments due an employee under an oral or written agreement."  MASS. GEN. L., c. 149,

§ 148.  Defendants do not dispute that vacation time is considered a "wage" under the

Act nor do they argue that Plaintiff has inadequately pled that she was entitled to

vacation time under her employment agreement.  Rather, Defendants argue that

Plaintiff is not entitled to earned vacation time because she has not alleged that

---

[2]  At the hearing on Defendants' motion to dismiss, Defendants conceded that
they are "employers" for purposes of the Wage Act.

Morgan Collection's "company policy provided employees with payment for unused vacation days upon termination." (Defs. Mot. to Dismiss at 8.) The Wage Act imposes no such requirement.

As indicated, the Wage Act includes vacation payments "due an employee under an oral or written agreement." MASS. GEN. L., c. 149, § 148. The Act does not, however, condition recovery of such payments on the existence of any corporate policy that allows for payment of vacation time upon termination. Indeed, in *Souto v. Sovereign Realty Assocs., Ltd.*, 2007 WL 4708921, at *2 (Mass. Super. Ct. Dec. 14, 2007), the court, referring to an "Advisory from the Attorney General's Fair Labor Practices Division on Vacation Policies," noted that although "there is no Massachusetts statute or regulation that requires an employer to grant his employee vacation time, employers who choose to provide paid vacation to their employees must treat those payments like any other wages under [section 148]." Defendants' reliance on *Singleton v. Sinclair Broadcast Grp., Inc.*, 660 F. Supp. 2d 136, 156n.4 (D. Mass. 2009), is therefore misplaced; in *Singleton*, an employee's claim for vacation time was denied because the employer had an express policy of *not* compensating employees for such time upon termination. In contrast here, Plaintiff has alleged that her employment agreement included a provision requiring Morgan Collection to provide her with vacation time. For present purposes, that is enough.

The court also rejects Defendants' argument that Plaintiff's claim for unpaid vacation time is too vague because she fails to allege the total number of vacation days she received in connection with her employment or the number of days that went

11

unused.  Such facts, in the court's view, may be adequately determined in the normal

course of discovery and are not required in an initial pleading.  *See Twombly*, 550 U.S.

at 559 (holding that a plaintiff's complaint need only establish a "plausible entitlement

to relief."); *cf. Souto*, 2007 WL 4708921, at *3 (concluding that "a dispute as to how

much vacation time [the plaintiff] took, is sufficient to create a genuine issue of material

fact [for purposes of summary judgment].").

### b. Additional Compensation Based on Company Revenue

For purposes of the Wage Act, it is well-settled that "[n]ot everything that is

earned is a wage."  *Sterling Research, Inc.*, 2005 WL 3116758 at *13 (citing *Boston

Police Patrolmen's Ass'n, Inc., v. City of Boston*, 1999 WL 1260164, at *7 (Mass. Super.

Ct. Nov. 16, 1999)).  Rather, the Act distinguishes between assured compensation and

contingent compensation.  *See Baptista v. Abbey Healthcare Grp., Inc.*, 1996 WL

33340740, at *4 (D. Mass. Apr. 10, 1996) ("The distinction between assured and

contingent compensation is a sound one.").  The Wage Act also encompasses certain

commissions, although "[c]ourts have held that where the payment is erratic, such as a

yearly bonus, the payment does not constitute a commission as defined under the Act."

*Wilkie v. NETS, Inc.*, 2005 WL 3105692, at *3 (Mass. Super. Ct. Sept. 16, 2005).

Here, Defendants assert that Plaintiff's allegation that she was entitled to "non-

discretionary additional agreed compensation based on company revenue" is too

vague to constitute a wage under the Massachusetts Wage Act.  More to the point,

Defendants argue that Plaintiff does not specify the nature of the compensation or

indicate whether her receipt of the compensation was necessarily triggered by various

12

"contingencies." In response, Plaintiff argues that, because the additional compensation was non-discretionary, she has sufficiently stated a claim for a wage under the Act.

It should be noted that Defendants, in support of their position, primarily cite to cases addressing *commissions* under the Wage Act. Plaintiff, for her part, asserts that the additional compensation she seeks is a *wage*. Regardless, for payments to constitute either a wage or a commission under the Act, they must be assured and not contingent. *See Baptista*, 1996 WL 33340740 at *4 (wage); *Wilkie*, 2005 WL 3105692 at *3 (commission). Either way, the court harbors some doubt as to the ultimate viability of Plaintiff's claim for such additional compensation. Nevertheless, it will deny Defendants' motion to dismiss on this ground for the reasons which follow.

In arguing that the "additional compensation" was allegedly non-discretionary, and therefore covered by the Wage Act, Plaintiff relies on the Supreme Judicial Court ("SJC")'s decision in *Weems v. Citigroup Inc.*, 900 N.E.2d 89, 94 (Mass. 2009), where the court concluded that a bonus paid to an employee was not a wage under the Act. The court found "the operative fact [to be] that bonus awards under [the programs at issue] are discretionary, not because they are labeled bonuses, but because the employers are . . . under no obligation to award them." Two years later, the federal district court in *Sheedy v. Lehman Bros. Holdings Inc.*, 2011 WL 5519909, at *3 (D. Mass. Nov. 14, 2011), appeared to accept, at least *arguendo*, the argument now urged by Plaintiff here, namely, that "implicit in the *Weems* holding is that protected 'wages' covered by the Wage Act includes any payment which an employer is obligated to

13

make to an employee, including earned, non-discretionary bonus pay."  The court nonetheless held that the non-discretionary bonus at issue there was not a "wage" because the entire payment amount was "contingent upon [the plaintiff] remaining employed . . . for five years," a requirement which the claimant had not satisfied.  *Id.* at 4.  Thus, the fact that a payment is non-discretionary is not, alone, sufficient to render it a wage under the Act.

Plaintiff's allegation in the cast at bar -- that "the additional compensation" to which she was entitled was "non-discretionary" -- seems somewhat at odds with her characterization that such compensation was to be "based on company revenue."  The notion that such additional compensation was tied to the company's own performance would seem to indicate that it was contingent, and therefore "outside the scope of the Wage Act."  *Dennis*, 2000 WL 782946 at *1.  Again, however, given the early stage of these proceedings, the court believes that dismissal would be premature in light of Plaintiff's allegation that the payment was "non-discretionary."  The parties, during discovery, will have the opportunity to develop the facts regarding the nature and timing of the compensation before the court will need to determine whether, as a matter of law, such compensation falls within the purview of the Wage Act.

### c. Sick and Personal Time

Plaintiff also includes a claim for unpaid sick and personal time.  Defendants do not dispute that sick and personal time are recoverable as wages, per an express agreement by the employer, but argue that Plaintiff has not pled any such agreement. Rather, Defendants assert, Plaintiff alleges only that, per an agreement with her

employer, she could "accrue" personal and sick time.  Defendants thus differentiate between an agreement to *provide* sick and personal time to an employee during her employment and an agreement to *compensate* that employee for sick and personal time upon termination.  In essence, Defendants argue, Plaintiff has erroneously conflated these two approaches to sick and personal time.  The court disagrees.

As an initial matter, the court recognizes that there is some ambiguity in the relevant case law as to whether compensation for unused personal and sick time is recoverable under the Wage Act absent an express agreement.  *Compare Souto*, 2007 WL 4708921 at *4 (noting that individuals are "not entitled to recover compensation for personal and sick time under [the Wage Act] absent express agreement.") *and Dickens-Berry v. Greenery Rehab. & Skilled Nursing Ctr.*, 1993 WL 818564, at *3 n.4 (Mass. Super. Ct. Oct. 29, 1993) ("Sick leave is not considered to be 'wages' to which an employee is entitled upon termination absent an express agreement by the employer."); *with Doucot*, 734 F. Supp. 2d at 193 (noting that courts have "distinguished wages, which include assured compensation and compensation equivalents such as accrued vacation pay and sick leave, from compensation 'triggered by contingencies' [that are] thus outside the scope of the [MA] Wage Act.") (quoting *Dennis v. Jager, Smith & Stetler, P.C.*, 2000 WL 782946, at *1 (Mass. Super. Ct. Apr. 10, 2000)).  This court, however, need not decide the question since, as indicated, Plaintiff has alleged just such an agreement.  Rather, the court must determine whether an express agreement to provide sick and personal time is sufficient to enable a plaintiff to obtain payment for such unused time upon termination.

15

In the court's opinion, the distinction drawn by Defendants between agreements that "provide" for sick and vacation time and agreements that "compensate" for sick and personal time upon termination, while creative, finds little support in the case law.  First, Defendants cite *Dickens-Berry*, 1993 WL 818564, at *2-3; that case, however, did not involve a claim under the Wage Act.  Rather, the plaintiff, a former employee, sued her employer for allegedly violating an implied covenant of good faith and fair dealing in her at-will employment contract when it wrongfully terminated her.  In a single footnote devoid of any analysis, the court indicated that, even had the plaintiff accrued sick time, she would not be entitled to payment for such time because "sick leave is not considered to be 'wages' to which an employee is entitled upon termination absent an express agreement by the employer."  *Id.* at *8 n.4.  The court, however, gave no indication as to whether the sick time the plaintiff accrued was mandatory pursuant to an employment agreement.  Given the fact that the court devoted only cursory attention to the issue, there is nothing persuasive in the ruling to follow here.

As for *Souto*, 2007 WL 4708921, at *2, on which Defendants also rely, the plaintiff there brought a Wage Act claim, in part, to recover compensation for unused personal and sick time.  The plaintiff, however, did not allege that his employer was required to provide him with sick and personal time pursuant to an agreement; rather, as the court in *Souto* noted, the plaintiff had testified at his deposition only that employees would "*customarily* receive" sick and personal time as a "benefit of their employment."  *Id.* at 9 (emphasis added).  Under such circumstances, the court concluded, the plaintiff was not entitled to recover compensation for personal and sick

16

time absent express agreement. *Id.* This is not the case at bar.

Here, Plaintiff has alleged that her employer was *required* to provide sick and personal time pursuant to her employment agreement. If true, the sick and personal time allegedly owed to Plaintiff is more akin to assured non-discretionary compensation which may properly be considered a wage under the Act. *See Baptista*, 1996 WL 33340740, at *4; *Doucot*, 734 F. Supp. 2d at 193 (noting that courts have "distinguished wages, which include assured compensation and compensation equivalents such as accrued vacation pay and sick leave, from compensation 'triggered by contingencies' [that are] thus outside the scope of the [MA] Wage Act.") (quoting *Dennis*, 2000 WL 782946, at *1)); *cf. Souto*, 2007 WL 4708921, at *3 ("[E]mployers who choose to provide paid vacation to their employees must treat those payments like any other wages under [section 148].").  Granted, discovery may yield facts that will cause this court to reconsider this determination. At this stage, however, the court, assuming as it must that Plaintiff's allegations are true and correct, concludes that she has stated a "plausible claim of relief" to her sick and personal time. *See Twombly*, 550 U.S. at 559.

### d. Reimbursement for Health Insurance Costs

Defendants assert that health insurance costs are not covered by the Wage Act because such costs are not encompassed by section 148. In *Sterling Research, Inc. v. Pietrobono*, 2005 WL 3116758, at *13 (D. Mass. Nov. 21, 2005), the court also considered whether reimbursement for medical insurance premiums fell within the purview of section 148; the parties' employment agreement provided that the employer would pay up to $450 per month for a medical and dental plan selected by the

17

employee.  Nonetheless, the court, finding that the Wage Act is to be "construed

narrowly," concluded that such costs are not covered under the Act.  *Id.*

Plaintiff, for her part, does not appear to dispute that section 148 of the Wage

Act excludes health insurance costs.  Rather, she relies on section 150 of the Act,

which, in pertinent part, provides as follows:

> An employee claiming to be aggrieved by a violation of
> sections 33E, 148, 148A, 148B, 150C, 152, 152A or 159C or
> section 19 of chapter 151 may . . . institute and prosecute . . .
> a civil action for injunctive relief, for any damages incurred,
> and for any *lost wages and other benefits*.  An employee so
> aggrieved who prevails in such an action shall be awarded
> treble damages, as liquidated damages, for any lost wages
> and other benefits and shall also be awarded the costs of the
> litigation and reasonable attorneys' fees.

MASS. GEN. L. CH. 149, § 150 (emphasis added).  In essence, Plaintiff argues that the

inclusion of the language "for any lost wages and other benefits" in section 150

indicates that the scope of that provision extends beyond those wages contemplated by

section 148.

Unfortunately for Plaintiff's cause, the fact that section 150 may be somewhat

broader than section 148 is of little assistance to her.  Section 150 creates a private

right of action to enforce a variety of statutes, only one of which is section 148.  In light

of the fact that *other* statutes for which section 150 creates a cause of action allow for

the recovery of items other than wages, it would make no sense for section 150 to limit

recovery to wages alone.  Moreover, Plaintiff has asserted a wage claim only under

section 148 of the Act and the court is not aware of any case, state or federal, in which

an employee who brought such a claim was able to recover under the "other benefits"

clause of section 150.  Indeed, an essential element of a claim pursuant to the Wage

Act is that the deferred compensation sought constitute a "wage" under the statute.

*See Doucot*, 734 F. Supp. 2d at 192.  The court therefore declines to accept what it

views as Plaintiff's invitation to broaden the scope of section 148 by using the more

expansive language of section 150.

     The sole case Plaintiff cites in support of this novel proposition is instructive.  In

*Somers v. Converged Access, Inc.*, 911 N.E.2d 739 (Mass. 2009), an individual sued

under section 150 for violations of sections 148, the Wage Act, and 148B, the

independent contractor statute.  The SJC reversed the superior court's grant of

summary judgment, concluding that the plaintiff was entitled to a jury trial on the issue

of whether he had been misclassified as an independent contractor rather than an

employee.  In doing so, the SJC noted that, should a jury find that Plaintiff was

misclassified as an independent contractor, he would be able to recover the wages and

other benefits, including health insurance, to which he would have been entitled had he

been properly classified as an employee.  *Id.* at 751.  Thus, contrary to Plaintiff's

assertion, the SJC in *Somers* did not find that the plaintiff could recover health

insurance costs pursuant to the Wage Act, which is concerned only with the timely

payment of *wages*.  Rather, it found that such relief would be available to the plaintiff

pursuant to the independent contractor statute, the purpose of which is "to protect

employees from being deprived of the *benefits* enjoyed by employees through their

misclassification as independent contractors."  *Id.* at 749 (emphasis added).  The SJC

in no way indicated that such health care benefits are considered "wages" for purposes

of section 148 or that the plaintiff in *Somers* would have been entitled to such costs

pursuant to a claim under the Wage Act.  In light of the foregoing, the court will allow

Defendants' motion as to Count I to the extent Plaintiff claims she is entitled to

reimbursement for health insurance costs.

      2. <u>Count II: Breach of Contract Claim</u>

      The elements essential to pleading a breach of contract claim are: (1) the

making of an agreement; (2) due performance by plaintiff; (3) breach thereof by

defendant; and (4) resulting damage to the plaintiff.  *Kusek v. Family Circle*, 894 F.

Supp. 522, 527 (D. Mass. 1995).  Here, Plaintiff has alleged that she had an

employment agreement with Defendants and, in the court's view, has adequately

outlined the nature of the agreement as it regards payments for which she believes she

is entitled.  She also claims that she performed her job, did not receive these payments

upon termination, and was damaged as a result.  The court therefore finds that Plaintiff

has adequately pled the requisite elements, such that she has established a plausible

claim for relief.

      Still, Defendants argue, Plaintiff has not alleged in what form the agreement was

made (*i.e.* whether it was oral or written).  Since, in the courts's opinion, this level of

specificity is neither required at this stage in the proceedings nor fatal to her pleading,

*see Pearce v. Duchesneau Group., Inc.*, 392 F. Supp. 2d 63, 69 (D. Mass. 2005)

(disagreeing with defendant's assertion that "the plaintiff is required to state with

particularity whether the contract was written or oral" and concluding that the "question

of whether the contract was written or oral is a proper matter for discovery"), the court

will deny Defendants' motion to dismiss Count II.

### 3. Count III: Detrimental Reliance Claim

The elements of detrimental reliance, which are essentially the same as those for promissory estoppel, are: "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." *Elephant for Dollar, Inc. v. DDRM Riverdale Shops, LLC*, 2012 U.S. Dist. LEXIS 52083, at *13 (D. Mass. Mar. 2, 2012).  In Count III of her amended complaint, however, Plaintiff does not plead any facts specific to her claim of detrimental reliance.  She simply states that "Defendants made a promise to [her]" and that she "reasonably relied on the promise to her detriment and has suffered damages as a result."  (Amended Complaint ¶¶ 37-38.)  Plaintiff does not specify what promises or representations were made to her, how she relied on such promises, or how she suffered as a result of her reliance.  Accordingly, the court will dismiss Count III.  In short, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 225 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

### 4. Count IV: Unjust Enrichment Claim

"The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party."  *Bushkin Assoc., Inc. v. Raytheon Co.*, 906 F.2d 11, 12 (1st Cir. 1990).  Here, again, the court finds dismissal warranted.  Plaintiff, in Count IV of her amended complaint, does not

21

plead any facts specific to a claim of unjust enrichment.  Rather, she simply states that she "conferred a benefit upon Defendants by performing her work for them," that "Defendants had an appreciation or knowledge of the benefit," that "Defendants accepted and retained the benefit," and that "[u]nder the circumstances, it is inequitable for Defendant[s] to retain the benefit without payment to Plaintiff."  (Amended Complaint ¶¶ 36-39.)  Again, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Morales-Cruz*, 676 F.3d at 225 (quoting *Iqbal*, 129 S. Ct. at 1949).

### III. CONCLUSION

For the reasons stated, Plaintiff's motion to remand is DENIED.  Further, Defendants' motion to dismiss is ALLOWED as to Counts III and IV; Defendants' motion to dismiss is also ALLOWED as to Count I to the extent Plaintiff raises claims for health insurance reimbursement, but not otherwise.  The Clerk shall set this matter down for a scheduling conference.

IT IS SO ORDERED.

DATED: August 1, 2012

 /s/   Kenneth P. Neiman   
KENNETH P. NEIMAN
U.S. Magistrate Judge